**SO ORDERED.**
**SIGNED this 2nd day of September, 2016**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

IN RE:
KY SIMOUKDALAY                              CHAPTER 13
SANH DIMOUKDALAY                            CASE NO.:  1:15-bk-14988-SDR
    Debtors

ORDER AND MEMORANDUM

The court has before it the Debtors' motion to alter or amend.  The Debtors contend that the legal fees and costs associated with the Proof of Claim of Ann Chiang, claim no. 3, are either not allowed under the contractual documents or are excessive and should be reduced further. The court has jurisdiction to determine this matter under 28 U.S.C. §§ 1334(b) and 157(b)(2)(B). After reviewing the motion and the response, the court asked for additional briefing on the issue of what fees could be charged based on language in the deed of trust where the note did not contain a clear obligation for the debtors to pay for the costs of collection.

After reviewing the Debtors' motion and the creditor's response and the supplemental briefs, the court will grant in part and deny in part the Debtors' motion to reconsider.

1

### I. Background

On January, 6, 2016, the Debtors objected to the claim of Ann Chiang. The claim arose from a note for $65,000 executed by the Debtors on February 24, 2003, secured by a lien on their principal residence. The lien is evidenced by a deed of trust dated February 24, 2003, and was properly perfected by filing in the Registers Office of Hamilton County, Tennessee. (Proof of Claim No. 3.) The claim also included prepetition attorney's fees of $3,927.56. (*Id.*) The basis of the objection was that the principal and interest had been miscalculated and that the creditor had not given credit for all of the payments. On March 16, 2016, the Debtors again objected to claim no. 3 of Ann Chiang on the basis that the creditor was seeking excessive and unreasonable fees and costs and the creditor had improperly calculated the principal and interest. (Doc. No. 38.)

On March 16, 2016, the Debtors also filed a Motion for Determination of Mortgage Fees and Expenses and Objection to Post Petition Mortgage Fees and Expenses of Creditor Anny Chiang. Both the amended objection and the motion were heard on March 17, 2016. The parties announced that they had been able to reconcile the payments and the calculation of interest but not the amount of the fees. Following the hearing, the court allowed the proof of claim in the amount of $70,779.79. The Debtors filed a timely motion to reconsider.

Prior to the bankruptcy filing, the Debtors had defaulted on their payment obligations. Ms. Chiang and the Debtors had entered into a loan modification in the summer of 2015. There were additional defaults. From the entries in the itemized statements provided by Ms. Chiang's counsel, Ms. Chiang resumed her foreclosure actions in the fall of 2015. Ms. Chiang became concerned that there would be damage to the property before the sale could be conducted and an investigator was retained to determine if there was damage to the property. No damage was

found.

On November 11, 2015, the Debtors filed bankruptcy. Proof of Claim No. 3 was filed on December 16, 2015. Following the objection, the claim was amended and post-petition attorney fees of $6,067.00 were added. This addition time included time to prepare the proof of claim, attend the first meeting of creditors, respond to the objections, and prepare the amended claim. Ms. Chiang had filed two other claims to which the Debtors objected and which she ultimately withdrew.

In the court's first opinion, the court disallowed fees that it considered to be for training and for duplicative billings by two attorneys. It also disallowed expenses for credit card charges that it found to be part of the firm's overhead. It allowed fees and expenses for the prepetition period of $3,028.82 and the post- petition period of $5,462.50, for a total of $8,491.32. The parties agree that the value of the property securing the note exceeds the amount claimed by Ms. Chiang.

The court has jurisdiction under 28 U.S.C. § 1334 and 157(b)(2)(B) to hear and determine this matter.

## II. Standards for Reconsideration

Motions for reconsideration are construed as motions to alter or amend judgment under F.R.C.P. 59, made applicable to bankruptcy proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure.

> A court may grant a motion to alter or amend judgment only if there was "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

*Am. Civil Liberties Union of Kentucky v. McCreary Cnty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010).

> "Motions for reconsideration are 'not an opportunity to re-argue a case' and should not be used by the parties to 'raise arguments which could, and should, have been made before judgment issued.' " *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992).

*In re SCBA Liquidation, Inc*., 485 B.R. 153, 160 (Bankr. W.D. Mich. 2012).

> The burden is on the party seeking reconsideration to demonstrate the existence of manifest errors of fact or law. *Hager v. Paul Revere Life Ins. Co.,* 489 F. Supp. 317, 321 (E.D. Tenn. 1977), *aff'd. without opinion*, 615 F.2d 1360 (6th Cir. 1980); *Solar Laboratories v. Cincinnati Advertising Products Co.*, 34 F. Supp. 783 (S.D. Ohio), *appeal dismissed*, 116 F.2d 497 (6th Cir. 1940) (motion for reconsideration not to be granted unless the court manifestly misapprehended the law or the facts).

*In re Watson*, 102 B.R. 112, 113 (Bankr. S.D. Ohio 1989).

### III. The Issues to Be Reconsidered

The Debtors ask the court to reexamine its holdings that (1) preparation of a modification to the note is not "on account of the execution and enforcement" of the trust created by the deed of trust which secured the obligation of the Simoukdalays to Ms. Chiang, and (2) whether the fees requested are reasonable.

A. The Scope of Fees Included in Enforcement of the Deed of Trust.

The Debtors request the court disallow $624 related to modification of the loan after default. They raise the issue because the note they executed does not contain a clear right to obtain attorney's fees and expenses incurred in the collection of the note. The note states:

> Demand, notice and protest are expressly waived and if not paid in full at the time and in the manner above specified, then all principle shall at the option of the legal holder hereof become at once due and payment without notice and will pay all expenses and cost, including reasonable attorney's fee, incident to collection.

(Claim No. 3, Ex. 1, Note.) This single sentence is a combination of a waiver of demand, notice and protest, presumably by the debtor, a right to accelerate by the noteholder, and an attorney's fees clause for fees incident to collection. The court found the attorney's fee clause to be

4

ambiguous because it did not specify who would pay the attorney's fees. Tennessee recognizes the American rule and does not allow for fee shifting without a contractual agreement. *House v. Estate of Edmondson,* 245 S.W.3d 372, 377 (Tenn. 2008). The creditor put on no proof to clarify the ambiguity at the hearing. Because of the lack of a subject as to who would pay, the court then considered whether the deed of trust contained a contractual obligation to pay attorney's fees.

The deed of trust mentions attorney's fees in two places. The first reference to attorney's fees is contained in the description of the obligations which the real property secures. The deed of trust provides:

> But this conveyance in made in trust for the following uses and trusts, to-wit:
>
> For the purpose of securing the payment of a promissory note of even date, in the principal amount of Sixty Five Thousand and 0/100 ($65,000) Dollars, together with interest and other costs. And at such interest rate as therein stated, executed by Sanh Simoukdalay and payable to the order of Ann Chiang, beneficiary as set out in said note, and to further secure any all indebtedness which the Grantor'(s) herein may owe to said beneficiary at any time during the life of this deed of trust, whether evidenced by notes, checks, overdrafts or otherwise, and providing for the payment by the maker of a reasonable attorney's fee, or commission charges, for collection in case said indebtedness is collected by an attorney, and for the further purpose of securing and making certain the payment of any and all notes that may be hereafter given and accepted in renewal of said indebtedness, in whole, or in part, or any extensions of the notes above described or of any of the payments thereunder, or of any additional notes which may be hereinafter given, whether secured or otherwise.

(Proof of Claim No. 3-1 p. 2.)

The second reference to attorney's fees is found in the provision related to the application of proceeds. There it provides:

> In case of sale under this Deed of Trust, the proceeds will be applied to[sic] the Trustee:

5

> First - To pay all costs and charges of executing this trust, including attorney's fees and the expense of any litigation which may arise on account of the execution and enforcement of this trust.
>
> Second – To pay any debt, or any balance then remaining unpaid.
>
> Third – The residue to be paid to Ann Chiang, or order.

(Proof of Claim No. 3-1 p. 3.)

The court relied on the second reference in the deed of trust to provide the contractual basis for the award of attorney fees. Only in the post hearing briefs did the creditor direct the court's attention to the additional provision describing the debt obligations secured by the conveyance.

The fees that the Debtors challenged were the fees expended in pre-bankruptcy modification of the note and in preparation of the proofs of claim and the participation in the bankruptcy proceeding. The Debtors argued that the provision allowing for the payment of costs and charges of executing the trust and enforcing the trust did not include these expenses. The court found that a workout and the modification of the trust after a default would also be an obligation of the Debtors under this provision. A further review of the case law in Tennessee leads the court to conclude that this conclusion was in error. Language providing for recovery of fees in enforcement of a deed of trust is not equivalent to a right to recover costs of collection contained in a note. It may allow for more than strictly the foreclosure sale costs, but not every attorney's fee or charge incurred after a default. For example, the cost of bringing a suit to foreclose, even though the obligations in the note were barred by the statute of limitations, could be recovered under the deed of trust as the expenses of enforcement. *Vick v. Vick*, 398 S.W. 2d 74 (Tenn. Ct. App. 1964).

> Thus it was necessary for the trustee in this deed of trust, under the direction of the holder of the secured debt, to have counsel to file and prosecute this lawsuit. That being true we think that the holder of that debt was entitled, as a part of the 'expense', to have a

6

> reasonable attorney's fee fixed and to be paid from the proceeds of the sale of this property.

*Id.* at 80. The costs of defending claims against the mortgage holder who was attempting to foreclose based on a provision in a deed of trust for payment of attorney's fees incident to the foreclosure would be recoverable.

> West Pointe also contends that the only attorney fees and expenses to which the Defendants are entitled are those incident to the foreclosure of the trust deed and not those incurred in connection with the defense of the present suit. We do not choose to narrowly construe the provisions of the trust deed relative to attorney fees and expenses, observing that it was absolutely necessary that this case be defended before the Defendants could foreclose the trust deed.

*W. Pointe Properties v. Frye*, 934 S.W.2d 339, 342 (Tenn. Ct. App. 1996).

But another Tennessee court has disallowed certain fees in a situation where the note and deed of trust contained no provision "on their face for the payment of any attorney's fee if the notes are not paid when due and if placed in the hand of an attorney for collection." *Shepherd v. Kennedy*, 11 Tenn. App. 373, 376, 1930 WL 1654 *3 (Tenn. Ct. App. 1930). In that case, the trust deed contained a separate provision.

> The trust deed is on the form then in use by the Union & Planters Bank & Trust Company, and contain a provision that the mortgagors should pay the taxes, keep the property insured for the benefit of the mortgagee, and keep and maintain the property in good condition and repair; 'and will pay such expenses and fees as may be necessary in the protection of the property and the maintenance and execution of this trust,' and provides that the holder of the indebtedness may in his discretion advance such sums as may be proper 'to satisfy taxes, maintain insurance and repairs, and protect and preserve the property,' and such amounts so paid shall be held and treated as a part of the expense of administering the trust.
> It is then provided that if the grantors shall pay the indebtedness secured when due, 'and shall pay such sums as shall be necessary to discharge taxes and maintain insurance and repairs; and the costs, fees and expenses of making and executing this trust,' then the conveyance shall be void, etc. But if they shall fail to pay any part of said indebtedness, principal or interest when due, or to pay taxes, or to maintain insurance or repairs, 'or the necessary expense of protecting and executing this trust,' then the entire indebtedness shall become immediately due and payable at the option of the owner thereof, and the trustee shall advertise, and sell; and the proceeds of sale shall be applied.

> '(1st) to payment of the expenses of making, maintaining and executing this trust, the protection of the property, including the expense of any litigation and attorney's fees, and the usual commissions to the trustees' (2) to the payment of the indebtedness secured, etc.

*Id.* at 376-77.

In *Shepherd*, the court looked to the terms of the deed of trust to determine whether fees for defending a lawsuit based on the issue of whether the trustee had violated an agreement with the obligor to extend the time for payment of a note. The court disallowed the fees related to the litigation over the extension on the basis that the fees were not incurred "in the maintenance and protection of the trust." *Id.* at 377. The court specifically notes that the lender's forms were later amended to broaden when attorney's fees could be collected. The new language provided that the borrower will pay "an attorney's fee if the notes be placed in the hands of an attorney for collection by suit or otherwise." *Id.* at 378. The court found that the fees incurred in fighting against the allegations of breach of the extension agreement were an "outside matter" and not covered by the terms of the deed of trust.

In light of these holdings, the court finds that the costs for modification of the terms of the note are outside of the enforcement of the deed of trust.

The characterization of the postpetition fees for the claim preparation are not so clearly outside of the enforcement of the deed of trust. The Debtors admit that they were in default of their obligations at the time they filed bankruptcy. Ms. Chang had a right to foreclose her security interest but she was stayed by the bankruptcy filing. 11 U.S.C. § 362(a)(4). In that sense, the bankruptcy filing was a challenge to the enforcement of the deed of trust and her participation in the case was necessary to retain her ability to enforce the deed of trust. Under the reasoning of *W. Pointe Properties v. Frye,* those fees could be allowed as a defense of the secured creditor's interest in order to maintain the right to foreclose.

The court recognizes that secured creditors are not required to file proofs of claim as are unsecured creditors in a chapter 13 (Fed. R. Bankr. P. 3002(a)), but to be treated as the holder of an allowed secured claim, the creditor must file a proof of claim. 11 U.S.C. §§ 501(a) & 502(a). In addition the local rules require that secured creditors must provide proof of their perfection or face the prospect of paying the attorney's fees if a trustee must sue them to determine whether they are perfected. E.D. Tenn. LBR 3001-1(b). If a holder of a mortgage secured by the debtor's principal residence files a proof of claim, Fed. R. Bankr. P. 3001 (c) requires substantial information about the payment history and the accrual of interest, fees, and charges. For these reasons, the court does not find that filing a proof of claim in a bankruptcy case, attending the first meeting of creditors and reviewing a chapter 13 plan are matters outside of the enforcement of the deed of trust. This course of action is directly in response to the debtors' defensive action of filing a bankruptcy and is similar to the costs associated with defending the lien created by the deed of trust.

However, the court's determination that the modification is outside the enforcement of the deed of trust is an empty victory. Ms. Chiang offers an alternative contractual basis for the recovery of her costs of collection as mentioned above. The other basis for recovery is the reference to attorney's fees related to what obligations are secured by the conveyance. This reference to the fees is much broader and is not limited to enforcement of the deed of trust. It states that the conveyance is for "providing for the payment by the maker of a reasonable attorney's fees in case said indebtedness is collected by an attorney." It appears to the court that the Debtors' agreement to create a lien against their property to secure the payment of a reasonable attorney fees "in case the indebtedness is collected by an attorney" provides the

9

contractual basis to impose the fees on the Debtors. It cures the deficiency in the note and the limitations created by the enforcement provision of the deed of trust.

Because of this additional language, the court finds that there is a contractual basis for Ms. Chiang to claim all of her reasonable attorney fees, even if they would not have qualified as enforcement of the deed of trust.

B. The Reasonableness of the Attorney's Fees.

The second basis for reconsideration cited by the Debtors is that the fees allowed are not those customarily charged in the locality for similar legal services. The court relied on Tennessee law to determine the standard for reasonable attorney's fees citing the factors listed in *Killingsworth v. Ted Russell Ford Inc.*, 104 S.W. 3d 530, 537 (Tenn. Ct. App. 2002). The Debtors request reconsideration on whether state or federal law governs the standards for reasonableness. They also seek reconsideration of the court's finding that the fees were reasonable. Specifically, the Debtors have provided a list of fees charged by mortgage creditors related to foreclosure, property inspection and preparation of a proof of claim. The fees range from approximately $180 to $4,000. Although these numbers were not provided at trial, the Debtors did make the argument that the fees were excessive and asked the court to take judicial notice of the fees charged in other cases and provided a list of cases.

1. The Applicable Standard for Reasonableness

The Debtors contend the court's selection of Tennessee law to determine the factors for consideration of the reasonableness is an error. The Debtors rely on the case of *In re Beyer*, 169 B.R. 652, 655-56 (Bankr. W.D. Tenn. 1994) for the proposition that federal law determines the standard for reviewing the reasonableness of fees in a bankruptcy case. The case also states that the burden of proof on all fee matters is on the party applying for the fees. *Id.* at 656.

10

The authority for the allowance of attorney's fees as part of a secured claim is found in 11 U.S.C. 506(a) which "authorizes the court in appropriate cases involving oversecured creditors' claims to award compensation for reasonable fees and expenses of attorneys pursuant to an agreement between debtors and creditors." *Id.* at 655. After a review of the case law addressing the standard for the allowance of fees for oversecured creditors, the court agrees with the Debtors. The court should look to federal law for the standard of reasonableness, although the analysis may produce a similar result. Many of the factors contained in *Beyer*[1] are also found in *Killingsworth*.[2]

The Sixth Circuit has stated a standard for determining the reasonableness of fees which has been adopted by the Bankruptcy Appellate Panel for the Sixth Circuit and applied to the allowance of fees to an oversecured creditor in bankruptcy. *In re Scarlet Hotels, LLC*, 392 B.R.

---

[1] The Court in evaluating the reasonableness of the instant fees, has duly considered, among others, the following factors: (1) the nature, extent, length and value of the services rendered; (2) the bankruptcy and non-bankruptcy experience, reputation, and ability of the attorneys; (3) awards in similar cases; (4) the novelty and difficulty (or lack thereof) of the questions presented; (5) the skill requisite to perform the legal services properly; (6) the customary fee; (7) professional time actually spent; (8) amount involved in potential risk; (9) the results of the cases; (10) specialty in which the attorneys may be practicing; (11) fees sought to be applied; (12) distinction between partner and associates time; (13) costs of comparable services; (14) use or lack thereof of paralegals; and (15) duplication of efforts. <u>In re Beyer</u>, 169 B.R. 652, 655 (Bankr. W.D. Tenn. 1994)

[2] In this state, the establishment of a reasonable attorney's fee is determined in accordance with Tennessee Code of Professional Responsibility DR 2–106 (2002), which is a part of Tenn. Sup. Ct. R. 8. DR 2–106 provides, in pertinent part, as follows:

(B) . . . Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
With respect to the final factor, our Supreme Court has opined that "[a]n attorney's fee should be greater where it is contingent than where it is fixed." *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002) (citations omitted).

698, B.A.P. 6th Cir. 2008) (citing *Womack Lumber Co. v. Guaranty Mtg. Co. (In re Bain),* 527 F.2d 681, 687(6th Cir. 1975) as citing *Quaker Oats Co. v. Burnett*, 289 F. Supp. 283, 286-87 (E.D. Tenn. 1968).

> In the Sixth Circuit, the standard for determining the reasonableness of fees has been stated as follows:
>> The amount of an attorney's fees ' * * * is peculiarly within the discretion of the Court because the attorney is an officer of the court. * * * ' *Noone v. Fisher,* supra, 45 F. Supp. at 656(9). The reasonableness of the allowance ' * * * is to be determined upon a consideration of all the facts and circumstances presented *705 by the record, primarily the amount involved and available, the nature of the responsibility assumed by the attorneys, the character and extent of the services which they have performed, not only in the technical litigation itself, but also in matters arising out of and incidental to such litigation.
>> * * * These matters are within the domain of legal knowledge, and, therefore, opinion testimony by lawyers of experience and reputation is admissible as expert testimony to assist the Court. But the Court, on the theory that judges have first hand experience and knowledge of the subject, is the final arbiter, and is not bound by the opinion of the professional legal experts who testify.
>> "The allowance * * * should be an exercise of judicial discretion, founded upon the knowledge of the court making the allowance of the real value of the services performed, and should not be rested upon the testimony of experts as to the general value of professional services.' *Hitchcock v. American Pipe & Const. Co.,* 90 N.J.Eq. 576, 107 A. 267, 269.
>> 'Except for these general principles, which are recognized * * * in the decisions of this Court * * *, there is no formula, or set rule, by which the value of legal services may be appraised, and the amount which would represent reasonable compensation determined. * * *' *Carmack v. Fidelity–Bankers Tr. Co.* (1944), 180 Tenn. 571, 581–582(8), (9, 10), 177 S.W.2d 351, 355(8), (9, 10).
> *Quaker Oats Co. v. Burnett,* 289 F.Supp. 283, 286–87 (E.D.Tenn.1968), cited with approval in *Womack Lumber Co., Inc. v. Guaranty Mtg. Co. (In re Bain),* 527 F.2d 681, 687 (6th Cir.1975). Particular deference is given to a bankruptcy court's review of fee applications because the bankruptcy court has intimate knowledge of the case and the efforts expended and the value of services rendered. *See, e.g., Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978) ("An appellate court is not warranted in overturning the trial court's judgment [re: attorneys' fees] unless under all of the facts and circumstances, it is clearly wrong."). The bankruptcy court is not required to address in detail, in its opinion, each line item of the fee application.
>> However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.... Where facts

> which will support a judgment can be inferred from a [trial] court's other findings, an appellate court will deem that such inferences were drawn.
>
> *In re Dolph,* 215 B.R. 832, 834 (6th Cir. BAP 1998) (internal citations omitted).

*In re Scarlet Hotels, LLC*, 392 B.R. 698, 704–05 (B.A.P. 6th Cir. 2008). In *Scarlet Hotels*, the Appellate Panel recited the factors in *Beyer* in a quote from the transcript and did not find that the reliance by the bankruptcy court on those factors was clear error. (*Id.* at 703.)

The court will apply the standard as stated in *Scarlet Hotels*. The amount involved is substantial. It is a home mortgage securing a debt of approximately $70,000. The fees requested are in the range of 10-15% of the balance. The court has considered the particular circumstances of this case, such as experience and sophistication of the mortgage holder and the advent of new forms at the time the proofs of claim were being prepared that would cause the fees to be higher than the fees seen by a national mortgage servicer.

The primary focus of the Debtors' request for reconsideration is that the fees are out of line with those charged by other practitioners in the same locality, or as *Beyer* states this fact "awards in similar cases." *Beyer*, 169 B.R. at 655. The fees requested in this case are almost double the highest number for similar services. There is no evidence or implication that the time was not actually spent by the attorneys involved or that the attorneys involved were not worth their hourly rate. Mr. McKoon and Mr. Hegemon are knowledgeable attorneys who have appeared before this court in a competent and professional manner. Ms. McGregor is a less experienced attorney, and her hourly rate reflects her experience level. What the Debtors object to is the time spent preparing for court and the amount of time necessary to accomplish the tasks at hand. The court has already reduced the fees where it found that there was duplication or educational charges that a regular bankruptcy practitioner would not have incurred. It has not disallowed all of the time described as preparation or legal research because the court is

unwilling to find that an attorney who regularly appears before the court should not be compensated for making sure he or she is on solid legal ground. Furthermore, the court finds the higher number has been justified in this case. The original objection to this claim was that the amount of the claim was not properly calculated and that the creditor had failed to give proper credit for all of the payments made by the Debtors. The Debtors were aware that the creditor was an individual when they entered into the mortgage. The creditor is not in the business of making mortgage loans. The original accounting was handwritten on notebook paper and attached to the claim. Whereas a large mortgage holder will have a system in place for efficiently handling matters such as those in this case, this particular individual creditor did not. When the objection arose, her attorneys were required to reconstruct the accounting in order to file the attachments now required for a mortgage claim. The parties were able to reach a consensual resolution on the amount of the principal and interest due under the note. Although the court has not allowed fees associated with the other claims, it would note that the Debtors' relationship with the creditor was complicated by two other transactions viewed very differently by the parties and that there were issues of trust between the parties as seen by the concern about the condition of the property. Subject to the additional items noted below, the court does not find that allowing the fees will result in a manifest injustice that would justify the court further altering its prior holding.

### 2. Additional reductions

The court has already disallowed those fees and expenses which it found objectionable based on duplication and education of the attorneys involved. The court upon further review has found additional time entries that should have been adjusted or disallowed based on the court's prior ruling. There is duplication of time for John Hegeman, who prepared to go to the meeting of creditors but did not attend. Rather Mr. McKoon, at a substantially higher rate, attended along

with Ms. MacGregor. In reviewing the time spent for the first meeting of creditors, the court also did not consider that the attorneys were dealing with three claims filed by Ms. Chiang, only one of which would allow for the post-petition accrual of attorney fees under section 506(b). There is no indication that there was any allocation of time between the three claims. The court will therefore make adjustments by reducing the hourly rate for Mr. McKoon from $350 to $230, which is Mr. Hegemon's hourly rate, for the services provided on January 7, 2016 and disallow Ms. MacGregor's time for that day as duplicative. That adjustment results in a reduction of $288 in Mr. McKoon's time and $585 in Ms. MacGregor's time, for a total further reduction attributable to time on January 7, 2016 of $873. The court also notes that there was a $70 charge on February 15, 2016 which should have been disallowed because it is for work on an unsecured claim. Based on the court's further review of these entries, the allowed time should be reduced by an additional $943.00.

The court will grant the motion in part and reduce the fees and expenses of $8,491.32 previously allowed by $943.00 for the duplicative time and time related to the unsecured claim. It will deny the motion with respect to any further disallowance.

The court will enter a separate order altering its prior order to reflect its findings and conclusions and allowing claim no. 3 in the amount of $69,836.79.

# # #